[Civ. No. 24408. Fourth Dist., Div. One. Nov. 16, 1982.]

SUSAN B. ERZINGER et al., Plaintiffs and Appellants, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

COUNSEL

Robert A. Destro, Burton Shamsky and Patrick Monaghan for Plaintiffs and Appellants.

Donald L. Reidhaar, Gary Morrison, Lawrence B. Garcia and Karla J. Knieps for Defendants and Respondents.

Phyllis Alden Truby, Wendy A. Woldt, Hilary Huebsch Cohen, Molly E. Arnold, Jennifer Tachera, Susan Bertken, Kathleen Yates and Judith A. Harper as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**BROWN (Gerald), P. J.**—Plaintiffs Susan Erzinger et al., appeal a judgment favoring the Regents of the University of California (University) on the plaintiffs' third amended complaint.

The plaintiffs' third amended complaint alleges: Plaintiffs are students at the University; the University collects a registration fee from all students; the registration fee is used to provide health services to students at facilities on and off campus; such health services include abortion counseling, abortion referral and abortion; plaintiffs have refused to pay the portion of their registration fees used to pay for abortion counseling, abortion referral and abortion; plaintiffs have offered to pay all of the required fees except such amounts paid for abortion counseling, abortion referral and abortions; the University has not accepted partial payments of the required registration fees; the University has violated plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and article I, section 4, and article IX, section 9 of the California Constitution by cancelling plaintiffs' enrollments at the University; the University's collecting from plaintiffs fees used to pay for abortions would force plaintiffs to violate their religious beliefs as a condition for attending the University. The plaintiffs asked the superior court to declare unconstitutional the University's policy requiring all students to pay compulsory registration fees and allotting a portion of such fees to pay for abortions without a pro rata exception or exemption for plaintiffs. The plaintiffs also asked the court to enjoin the University from implementing such policy and discriminating against plaintiffs and others sharing their beliefs about abortion and abortion-related services.

Pending litigation the University permitted plaintiffs to deposit the disputed fees into a trust fund.

The University asked the court to specify as without substantial controversy: (1) the University's using mandatory student fees to provide student health services including abortion services and pregnancy counseling does not infringe plaintiffs' rights to free exercise of religion; and (2) the University's Regents

have legal authority to assess mandatory student fees and use such fees to benefit the student population even when such fees are not used directly to support the cost of specific educational programs or services.

The plaintiffs opposed the University's motion and filed their own motion for summary judgment, asserting as a matter of law they were entitled to judgment on all issues in their third amended complaint.

After hearing, the court denied plaintiffs' motion for summary judgment and granted the University's motion to specify issues as without substantial controversy. The court said: "In order for an individual to show that he has been prohibited from the free exercise of his religion, he must demonstrate that he has been coerced in his religious beliefs or that the government has unreasonably interfered with his practice of religion. In this case I see no coercion. The individuals who are students at the University of California are not required to submit to abortions. They are not required to, themselves, advocate abortions. They are not required, themselves, to advocate birth control. . . . Medical care is provided to students in the universities to enable the student to be as free as possible to devote themselves to their studies so that they will not have to worry about problems in connection with their health. . . . Merely because a student is required to pay 'X' number of dollars at the beginning of each semester or each quarter does not mean that that student is endorsing abortions. . . . I know of no authority for the proposition that refusal to pay government taxes or fees is an activity protected by the First Amendment and no case has been cited to that effect. . . .[The Regents] possess virtually exclusive power with regard to the internal regulation of the universities, and certainly this broad discretion extends to their ability and the right to be able to set mandatory student fees. . . . The health services that have been afforded to students of the University of California are really nondiscriminatory and they are religiously neutral and they are consistent with the educationally related objectives." After plaintiffs voluntarily dismissed other causes of action, the court entered judgment for the University on plaintiffs' third amended complaint.

■ Plaintiffs contend the court erred in finding the University's using mandatory student fees to provide student health services including abortion services and pregnancy-related counseling does not infringe their rights to free exercise of religion; they assert they should be exempt from paying the proportion of such fees the University uses to provide services they deem objectionable on religious grounds. However, to prevail on their First Amendment claim, the plaintiffs must allege and prove the University coerced their religious beliefs or unreasonably interfered with their practice of religion (*Abington School Dist.* v. *Schempp* (1963) 374 U.S. 203, 222-223 [10 L.Ed.2d 844, 858, 83 S.Ct. 1560]; *Cantwell* v. *Connecticut* (1940) 310 U.S. 296, 303-304 [84 L.Ed. 1213, 1217-1218, 60 S.Ct. 900, 128, A.L.R. 1352]). Plaintiffs do not show the

University's collecting mandatory student fees and using portions of such fees to provide services they deem objectionable in any way coerced their religious beliefs. Plaintiffs do not allege or show the University's collecting and using the fees coerced them from holding or expressing their views against abortion. They do not allege or show the University coerced them to advocate a position on abortion contrary to their religious views. They do not allege or show the University forced them to join any proabortion organization. They do not allege or show the University forced them to use the student health service programs, receive pregnancy counseling, have abortions, perform abortions or indorse abortions. Plaintiffs make no showing the University denied them enrollment because of their religious beliefs opposing abortion; instead, the University cancelled their enrollment because they did not pay mandatory student fees. Further, plaintiffs do not show the University's collecting mandatory student fees and using portions of such fees to provide services plaintiffs deem objectionable violates their First Amendment right to practice their religion. Plaintiffs' answers to the university's interrogatories assert their religious beliefs require them not to pay those portions of student fees the University uses to provide abortion-related services; they allege in their third amended complaint the University should exempt them from paying such portions of the fees. However, the right to free exercise of religion does not justify refusal to pay taxes: "nothing in the Constitution prohibits the Congress from levying a tax upon all persons, regardless of religion, for support of the general government. The fact that some persons may object, on religious grounds, to some of the things that the government does is not a basis upon which they can claim a constitutional right not to pay a part of the tax." (*Autenrieth* v. *Cullen* (9th Dist. 1969) 418 F.2d 586, 588, cert. den. 397 U.S. 1036 [25 L.Ed.2d 647, 90 S.Ct. 1353].) Similarly, the First Amendment does not prohibit the University from requiring all students, regardless of religion, to pay fees for general student support services; the fact plaintiffs may object on religious grounds to some of the services the University provides is not a basis upon which plaintiffs can claim a constitutional right not to pay a part of the fees.

■ Under article IX, section 9, subdivision (a) of the California Constitution, the Regents have full powers to organize and govern the University. Plaintiffs concede the University has power to assess mandatory student fees generally as a condition of enrollment but assert they should not pay the portion of such fees representing the portion of the University's services they deem objectionable. However, under article IX, section 9, subdivision (f) of the California Constitution, the Regents are "vested with the legal title and the management and disposition" of University property. Once the University collects mandatory student fees, such funds become University property. The Regents, not plaintiffs, have exclusive authority to decide how to spend University funds; allowing plaintiffs to withhold portions of mandatory student fees would effectively impair such authority. In asking the superior court to specify

issues as without substantial controversy, the University submitted declarations asserting providing comprehensive student health services is a proper University function serving the education-related purpose of minimizing the detrimental effects of students' health conditions on their academic performance. Plaintiffs offered no evidence to the contrary. Given such evidence, the superior court properly found "as a matter of law the Regents have the legal authority to assess mandatory student fees and utilize those fees for the benefit of its student population, even when those fees are not used directly to support the cost of specific education programs or services." In light of this finding, the allegations of the third amended complaint and plaintiffs' interrogatory answers, the superior court properly found the University's "use of mandatory student fees to provide student health services, which include abortion services and pregnancy-related counseling, does not infringe plaintiffs' free exercise of religious rights protected under the First Amendment to the United States Constitution."

■ Plaintiffs contend the judgment should be reversed because the University violated 42 United States Code section 300a-7(d).[1] While this statute did not exist when the complaint was filed, it would apply to discrimination occurring after its effective date, September 29, 1979. The statute was raised in plaintiffs' superior court brief and pursued here. We shall consider the issue.

The statute was intended to protect persons opposing abortion on religious or moral grounds. However, the statute is limited in scope.

The statute prohibits denying admission or discriminating against any applicant for study because of the applicant's reluctance to "assist or in any way participate in the performance of abortions or sterilizations." The crucial words are "performance of abortions or sterilizations." The proscription applies only when the applicant must participate in acts related to the actual performance of abortions or sterilizations. Indirect or remote connections with abortions or sterilizations are not within the terms of the statute. We believe Congress did not intend to prevent the University from requiring its students to participate in a comprehensive health insurance program which includes cost benefits for persons desiring abortions or sterilizations. A health program containing benefits

---

[1] 42 United States Code section 300a-7(d) reads: "No entity which receives, after September 29, 1979, any grant, contract, loan, loan guarantee, or interest subsidy under the Public Health Services Act, the Community Mental Health Centers Act, or the Developmental Disabilities Assistance and Bill of Rights Act may deny admission or otherwise discriminate against any applicant (including applicants for internships and residencies) for training or study because of the applicant's reluctance, or willingness, to counsel, suggest, recommend, assist, or in any way participate in the performance of abortions or sterilizations contrary to or consistent with the applicant's religious beliefs or moral convictions."

for procedures which others might choose does not mean the applicant is involved in the "performance" of those procedures.

The judgment is affirmed.

Cologne, J., and Staniforth, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 27, 1983.

The United States Supreme Court denied a petition for writ of certiorari on June 20, 1983.